648    COURT OF ERRORS AND APPEALS.

Stephen v. Camden and Phila. Soap Co.    *75 N. J. L.*

STEPHEN, DEFENDANT IN ERROR, v. CAMDEN AND PHILA-
DELPHIA SOAP COMPANY, PLAINTIFF IN ERROR.

Submitted July 8, 1907—Decided November 18, 1907.

1. Where the plaintiff, an architect, had prepared plans for the erec-
tion of a building under a written contract with defendant, pro-
viding compensation on a fixed percentage of its cost (the plaintiff
also contracting to supervise the work to be done upon the build-
ing for such percentage), and subsequently the defendant, without
right, abandoned the undertaking so that supervision became im-
possible—*Held*, that the plaintiff might recover of defendant the
reasonable value of his services performed before such abandon-
ment.

2. An implied condition was inferable from the contract and cir-
cumstances that if, by reason of the happening of a certain event,
such as the abandonment by defendant of any erection, it became
impossible for plaintiff to perform the entire work stipulated for,
yet he could recover, upon an implied *assumpsit*, for such portion
of the work as had been properly done by him.

On error to the Supreme Court.

The plaintiff declared in contract upon the common counts
in *assumpsit,* for value of work done and materials provided
by plaintiff at the defendant's request, with notice specifying
that the work was done by him as an architect in the prepara-
tion of plans and specifications for the construction of a
building, proposed to be erected by the defendant. At the
jury trial of the cause before the Supreme Court Circuit the
plaintiff offered in evidence certain letters of a correspondence
between the parties, containing his contract of employment
with defendant, the material portions of which are as follows,
viz.: On May 12th, 1903, the plaintiff wrote to defendant:
* * * "Mr. Jessup has brought up the tracing of the survey
of your newly-acquired property, and I am making you two
blue-print copies of the same for your own use. With your per-
mission, I will now proceed with the plans, &c., but I thought
you would like to have my verbal agreement with your Mr.
Maurice Hirst in writing, so I hereby agree to render com-

plete architectural services, including supervision and all the work usually done by an architect, for the sum of four per cent. on the cost of the work (or two and one-half per cent. for the plans and specifications). As this is a special price, I wish you to please do not let this get out in the public, as I am getting five per cent. for similar work. The way I get over it, I make you present of the details, said commission to be either paid in installments of four per cent. of the amount paid to the contractor as the work progresses, or as per enclosed schedule of the American Institute of Architects. Hoping to receive a written acceptance of the above, and thanking you in advance for the same, I am," &c. To which, on May 19th, 1903, the defendant (by its president) responded, viz.: "In replying to yours of the 12th inst., will respectfully say that your proposition to go ahead with the plans has been considered, but owing to the very unsettled condition of the labor market throughout the entire country, we do not feel disposed to go ahead with the erection of the building until the labor disturbance becomes more settled, so that we will have the assurance that when we start the building we will be able to finish it without interruption on account of the labor trouble, and as per our telephone conversation with you, if you desire to go ahead with the plans and take chances of the starting of the building being delayed, and in waiting for our settlement with you until such time as the building is well started, and, as you suggested, at which time we can certainly agree on some method of settling as the building progresses, but the final statement not to be made until the building is finished and turned over to us, when the final payment will be made for your services, or will take the risk and wait until building is finished. If this meets with your views, it will be entirely satisfactory to us to have you go ahead with the plans just as soon as you feel disposed to do so." On May 20th, 1903, the plaintiff replied: "In answer to your esteemed favor of the 19th inst., will state that I have decided to proceed with my portion of the work, and that I accept your proposition to take the chances of the starting of the building being delayed on account of the labor

650     COURT OF ERRORS AND APPEALS.

Stephen v. Camden and Phila. Soap Co.     75 N. J. L.

trouble, provided you will pay me in installments as asked for in my former letter of the 12th of May, 1903. This morning I left drawing at the office of the P. R. R. engineer to determine about siding, and expect answer to-morrow." A year thereafter, on June 20th, 1904, and after the services were rendered, as hereafter stated, the plaintiff wrote defendant as follows: "I have never received word officially from you whether you intend to build your proposed factory which I made plans and specifications for. The last time I saw Mr. Maurice Hirst he said you were contemplating altering another building. Will you please let me know by letter what you intend to do in the matter, as you are aware that the above work was done under considerable expense to me and in good faith that the building would be erected, I feel as though I ought to receive some compensation for my labors. I have not bothered you before, awaiting your decision and to allow you time to come to definite conclusions." To this letter the defendant, on June 22d, 1904, replied, viz.: "Yours of the 20th inst. received. You are certainly entitled to consideration in answering your question. We will either erect our buildings or will purchase one already erected. In either case you will be taken care of. If in purchasing a building erected, we will arrange with you for your compensation. You now understand, with the present condition of the times and the slow, dull business, we were justified in not going ahead with the new buildings."

The plaintiff established in evidence at the trial that he had, between April 14th and November 19th, 1903, performed certain services, contemplated by the above-quoted letters, as an architect, in the preparation of plans and specifications (together with some twenty-two blue-print copies) for the erection of a group of buildings (to be built for the defendant on its triangular plot of ground in Camden) adapted to the manufacture of soap, starch, &c.; that the defendant's president, as well as two of its other officers and directors, had frequently during this period visited his office and inspected his work, giving him special instructions and directions therein; that about December 6th, 1905, and after he had

waited more than two years for the building to be started by defendant, it had notified him, through its president and directors, "that the building was not going to be put up," and that the company had "finally abandoned the idea of erecting the building." The fact of this notification of abandonment was not disputed by the defendant, but was testified to by the president of the company, one of the witnesses for the defence, although the date of such notification was not stated by him. Presumably, therefore, the date fixed by the plaintiff was correct. This suit was begun in June, 1906. The defendant received from the plaintiff the plans at an unspecified date, but before suit was commenced. The plaintiff also produced evidence of the prices paid by him for the materials used in his work, and of the time in hours devoted to the work, and of the reasonable prices of an architect's services by the hour. The letters were admitted in evidence without objection. It appeared by the testimony of the defendant's president that he was authorized by the defendant corporation to make the agreement stated in the letters, though no resolution or action of the board of directors, as such, upon the subject was made to appear.

For the plaintiff in error, *John W. Wescott.*

For the defendant in error, *Francis D. Weaver.*

The opinion of the court was delivered by

VREDENBURGH, J. It cannot be doubted that the above displayed correspondence between the parties litigant exhibited a clear and complete written contract for the employment of the plaintiff's services, and that the construction of its effect was, under long and thoroughly settled legal rules, a question of law for the court's determination. The plaintiff in error, by its counsel, assigns for error, and urges that the court below should have construed the contract so as to relieve the defendant from liability, and erred in refusing to grant a nonsuit, or if not, then to direct a verdict in its favor. But these motions were properly denied. It seems plain from

652    COURT OF ERRORS AND APPEALS.

Stephen v. Camden and Phila. Soap Co.    75 *N. J. L.*

the contents of these letters that while both parties to the contract at its execution contemplated *delay* in the *starting* of the building until the labor disturbances should become more settled, that neither of them then contemplated the *abandonment* of its erection. The defendant recognized that it had received some benefit from the plaintiff's services performed by its letter of June 22d, 1904. The fact that the defendant retained in its possession the plans and results of the plaintiff's labor without offering to return them must be held to be an admission of the receipt by it of some benefit from the plaintiff's labor. Indeed, without resort to the defendant's written promise of June 22d, 1904, to make compensation for plaintiff's services, such was its legal obligation. Addison, in his latest work on *Contracts* (2 *Add. Cont.* (10*th ed.*) 419), thus states the principle which, I think, should control the case at bar, viz.: "When a special contract for work and services has been abandoned and put an end to, and the employer has derived some benefit from the work done under it, he may be made liable upon an implied promise to make a reasonable remuneration in respect thereof." The final abandonment of the projected building by the defendant put an end to the existence of the special contract, and it could not be interposed by defendant so as to prevent a recovery for the reasonable worth of the services rendered by plaintiff upon the strength of its prior existence. In the case of *Planche* v. *Colburn et al.,* 8 *Bing.* 14, the defendants had engaged plaintiff to write a treatise for a periodical publication. Plaintiff commenced the treatise, but before he had completed it the defendants abandoned the periodical publication, and it was held "that the plaintiff might sue for compensation without tendering or delivering the treatise." Chief Justice Tindall, in his opinion, said: "I agree that when a special contract is in *existence* and open, the plaintiff cannot sue on a *quantum meruit.* Part of the question here, therefore, was whether the contract did *exist* or not. It distinctly appeared that the work was *finally abandoned.* * * *. Under these circumstances the plaintiff ought not to lose the fruit of his labors." See *Inchbald* v. *Western*

*N. & T. Co.,* 17 *Com. B. (N. S.)* 733. In *Wald's Poll. Cont.*
(*3d ed.*) 337 (1903), the rule is thus stated, viz.: "If the
plaintiff has only partly performed, and has been excused
from further performance by prevention or by repudiation,
or abandonment of the contract by the defendant, he may re-
cover (either in England or America) the value of what he
has given. In some jurisdictions, if a price is fixed by the
contract, that is made the conclusive test of the value of the
services rendered, more frequently, however, the plaintiff is
allowed to recover the real value of the services, though in
excess of the contract price. The latter rule seems more in
accordance with the theory on which the right of action must
be based—that the contract is treated as rescinded and the
plaintiff restored to his original position as nearly as possi-
ble." The plaintiff certainly could not perform further ser-
vices by way of "supervision" unless a building was con-
structed, and such was the implied condition of his contract.
Pingrey, in his recent work on *Contracts (Ping. Cont. (ed.*
1905), § 659), says: "Under an implied condition of a con-
tract that the parties are to be excused from performance if
a certain event happens, and by reason of the happening of
the event it becomes impossible to do that which was con-
templated by the contract, there is an implied *assumpsit* for
what has properly been done by either of them." In *Phillips*
v. *Jones,* 1 *Ad. & E.* 333, the Court of King's Bench, through
Sir John Williams, in dealing with a similar case, thus ex-
pressed itself: "The expressions of the master, and the other
facts in the case, lead to the conclusion that he was evading
the performance of his agreement. If he had not actually
determined the contract, he had *put off* the *fulfillment of it,
unreasonably and unjustly.* The Lord Chief Justice there-
fore left the case properly to the jury, and they were at
liberty to find an *implied* agreement that the plaintiff should
have something for his services." It is to be observed that
the present plaintiff's claim for compensation is not for the
loss of such profits as he would have made by the completion
of the contract, but only for the reasonable worth of the ser-
vices he had actually rendered upon the faith of its original

existence. Under the assignments of error in this case it is unnecessary to consider (as none of them are directed to the point) the distinctions drawn in the cases decided in this state relating to recovery for work done under special contracts where the declaration is based upon the common counts alone. The most prominent of these are *Ryan* v. *Remmey,* 28 *Vroom* 474, and *Kehoe* v. *Rutherford,* 27 *Id.* 23. The view we have taken of the intent and effect of the written contract renders unnecessary any further consideration of the other assignments of error. None of them present the question of the absence of proof of corporate authority to enter into the contract. The judgment below should be affirmed.

*For affirmance*—MAGIE, CHANCELLOR, THE CHIEF JUS-TICE, GARRISON, HENDRICKSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL, J.J.    12.

*For reversal*—None.